*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FRYER/GASSER, Minors.

UNPUBLISHED
February 24, 2022

No. 357905
Crawford Circuit Court
Family Division
LC No. 18-004436-NA

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor children, SF, FF, KF I, KF II,[1] and IG, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions of adjudication), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent).[2]  We affirm.

## I.  FACTUAL BACKGROUND

Respondent is the mother of five children.  In 2018, the Department of Health and Human Services (DHHS) filed a petition to remove the children from respondent's care after Child Protective Services (CPS) received a complaint that 11-year-old SF had a black eye that was caused by respondent.  Respondent initially refused to allow CPS and police into her home and denied causing SF's injury.  DHHS also stated in the petition that respondent's home was filthy and the children were dirty and unkempt.  Respondent refused to participate in voluntary services with DHHS, and told DHHS she would not "jump through hoops" for them.  The petition also stated that respondent had tested positive for methamphetamine and amphetamine, and that she reported marijuana use.  The trial court granted the petition to remove the children, placed SF, FF, KF I, and KF II in foster care, and placed IG with her father.

---

[1] Respondent is the mother to twins with the same first and second initials.

[2] The father of four of the children had his parental rights terminated on May 28, 2021, but is not a party to this appeal.  The father of IG was not a respondent in this case and is not part of this appeal.

During the first year of the case, respondent participated in numerous services. She completed individual counseling at Grace Center, family counseling with the children, and a trauma-informed parenting class. However, respondent had chronic housing instability—she was evicted from her home, lost her apartment in a fire, and was homeless for several months. Respondent was also inconsistent with drug testing, missed numerous screens, and started frequently testing positive for marijuana, although she did not test positive for methamphetamine. At some point, respondent started taking prescribed medications to treat her mental health, and caseworkers reported that she was more willing to participate in services. However, respondent did not like the way that she felt on the medications and stopped taking them, which caused her mood to decline. Respondent reported that she used medical marijuana to help with her post-traumatic stress disorder (PTSD), anxiety, and depression, and that she obtained a medical marijuana card in August 2020. DHHS and respondent's physician referred respondent to Munson Behavioral Health (MBH) for psychotherapy services, although respondent maintained that she did not need mental health services. Respondent went to three appointments and stopped attending because she reported scheduling conflicts. Respondent later stated that she tried to start attending services again, but had an issue with her insurance, then could not connect with MBH because of the pandemic, then needed a second referral after she fixed her insurance because the first one had lapsed. She did not attend MBH services for more than a year.

In 2020, DHHS filed a petition to terminate respondent's parental rights because of her lack of progress with the parent agency treatment plan. The case was delayed for more than a year because respondent asserted in two separate hearings that the children had Native American heritage, although the identified tribes ultimately did not recognize the children for tribal membership. After hearings spanning four months, the trial court issued an oral opinion and terminated respondent's parental rights. The court found that termination was proper under MCL 712A.19b(3)(c)(*i*) because although respondent had rectified her housing issues by the end of the case, she had not rectified her physical abuse of SF; the court noted that because respondent did not acknowledge her role in the incident until very late in the case, she had not been able to obtain appropriate counseling to deal with her underlying issues. The court also determined that respondent had not rectified the barrier of her substance abuse because respondent used marijuana to self-medicate her mental health issues and had not provided any testimony from a medical professional that showed that marijuana was a necessary treatment for her. The court found that termination was proper under MCL 712A.19b(3)(c)(*ii*) because to the extent that respondent's mental health issues were identified later in the case, they continued to be a barrier to reunification. The trial court found that clear and convincing evidence supported termination under MCL 712A.19b(3)(j) because respondent had not addressed her mental health issues, caseworkers and the court had seen her anger and defiance, and respondent's lack of insight and inappropriate communications directly impacted the children in a negative way. The trial court found that termination was in the children's best interests, and terminated respondent's parental rights.

## II. ANALYSIS

We review for clear error the trial court's determination that at least one statutory ground for termination is supported by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial

-2-

court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *VanDalen*, 293 Mich App at 139. If we conclude that termination is supported by at least one statutory ground, additional grounds for the trial court's decision need not be considered. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## A. FAILURE TO RECTIFY CONDITIONS OF ADJUDICATION

The trial court did not err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*). MCL 712A.19b(3)(c)(*i*) provides that termination is appropriate when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in conditions that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The children were originally brought into care because of respondent's physical assault of SF, the filthy conditions of respondent's home, and respondent's use of methamphetamine and marijuana. The trial court recognized that respondent's housing was no longer a barrier. The trial court also found that respondent had not had appropriate counseling to deal with her physical abuse of SF because her acknowledgment of her own actions came so late in the proceeding. Although respondent testified that she benefited from a trauma-informed parenting class and acknowledged her role in the abuse, respondent continued to blame outside factors for the children's removal throughout the case, and she blamed DHHS for her lack of progress. This showed that respondent continued to refuse to recognize her role in the children's removal. Respondent also repeatedly commented that she did not benefit from therapy services because the counselors had not been through her specific trauma and were judgmental, and that she did not need mental health services, which showed that respondent lacked insight to address her mental health issues and had failed to benefit from the services. Therefore, the trial court correctly found that respondent had not appropriately addressed the issue of her physical abuse of SF in counseling. Because respondent was the perpetrator of the abuse, rather than the victim, this was properly considered as a basis to terminate respondent's parental rights. *In re Jackisch/Stamm-Jackisch*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 357001); slip op at 4-5.

Most significantly, the trial court correctly found that respondent failed to rectify the barrier of her substance abuse. Although methamphetamine was no longer a barrier for respondent,

respondent's ongoing use of marijuana remained a concern. Respondent argued that she used marijuana for medical purposes to treat her PTSD, anxiety, and depression. However, respondent only obtained a medical marijuana card in August 2020, months after she had consistently tested positive for tetrahydrocannabinol (THC). Even with the medical marijuana card, respondent failed to provide any professional testimony or evidence that suggested that marijuana was an appropriate treatment for her conditions. As the trial court pointed out, even though marijuana was legal for both recreational and medical use at the time of the termination trial, it was no more appropriate to self-medicate with marijuana than it would be to self-medicate with alcohol. The trial court also noted that respondent's psychological evaluation expressly recommended that respondent needed to be sober from substances to parent effectively, but respondent's reliance on marijuana only became more pronounced as the case went on. Therefore, clear and convincing evidence supported the trial court's conclusion that the issue of respondent's substance use continued to be a barrier to reunification, and termination was appropriate under MCL 712A.19b(3)(c)(*i*).

## B. FAILURE TO RECTIFY OTHER CONDITIONS

The trial court did not err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*ii*). MCL 712A.19b(3)(c)(*ii*) provides that termination is appropriate when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . .

> *   *   *

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent argues that the trial court did not clearly articulate what the "other conditions" were that prevented reunification, so she had no opportunity to address those issues. However, the trial court articulated that MCL 712A.19b(3)(c)(*ii*) encompassed respondent's mental health issues that were identified later in the case. The trial court extensively addressed this statutory ground and properly concluded that respondent had not rectified the barrier of her trauma and mental health concerns. The court noted that respondent's aggression toward caseworkers, defiance toward the court and DHHS, and comments that she could not trust counselors who had not been through her specific trauma showed her lack of insight. Respondent's suicidal ideations showed that she was not dealing with her emotional stability. Respondent's refusal to take her prescription medication; conclusion that she could treat herself with marijuana, yoga, and meditation; and delay in restarting mental health services all showed that respondent did not take her mental health issues seriously. Respondent repeatedly insisted that she did not need mental health services, made multiple excuses about her delays in participating in therapy services, and continued to blame caseworkers for her lack of progress, which reflected respondent's continued defiance toward the

court and DHHS. The record showed that despite nearly three years of services, respondent had not adequately addressed her mental health issues, and given her delay in participating in services, would not likely do so within a reasonable time. Therefore, the trial court did not err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*ii*).

## C. RISK OF HARM

The trial court did not err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(j).

MCL 712A.19b(3)(j) provides that termination is appropriate when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." This Court has recognized that either physical or emotional harm is sufficient to support termination under MCL 712A.19b(3)(j). *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Further, a parent's failure to comply with the terms and conditions of her service plan is evidence that the child will be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Respondent argues that she did not pose a risk of harm to the children because she had engaged in therapy services to address her mental health issues. However, as previously discussed, respondent's repeated refusals and delays to participate in services made her unable to address her significant mental health concerns. The trial court recognized that "the record is replete with examples of lack of insight, lack of guidance, [and] inappropriate communications" that directly impacted the children in a negative way. For example, respondent repeatedly told the children at parenting time visits that she could not afford to bring them snacks, yet she would bring energy drinks for herself and talk about going to bars with her friends on the weekend, which made the children feel like they were not a priority. She would make inappropriate comments during parenting time, including telling the children that they were coming home, telling SF that she had a "fat a\*\*" and looked like a boy, and complaining about the caseworkers. She struggled to follow COVID mask mandates, and the children mimicked her behavior. She frequently missed parenting time sessions, which had measured effects on the children—FF began self-harming after respondent missed visits, and KF I and KF II had behaviors of lying, stealing, and bedwetting. Respondent cancelled a virtual visit with IG on IG's birthday. Respondent also struggled to parent the children at the same time, and did not bring activities for them at parenting time. The trial court did not err by finding that respondent's instability and failure to timely treat her mental health services made placement with her a risk of harm to the children. See *In re Jackisch/Stamm-Jackisch*, ___ Mich App at ___; slip op at 6 (where the respondent struggled to manage the children and said inappropriate things during parenting time, statutory grounds to terminate existed). Therefore, the trial court did not err by terminating respondent's parental rights under MCL 712A.19b(3)(j).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Michael J. Riordan